W. D. ANDREWS v. T. W. ANDREWS.

(Decided March 15, 1898.)

*Will, Construction of—Estate Devised—Vesting of Devised Estate—Contract for Support—Entire Contract—Breach of Contract—Use and Occupation of Land—Betterments.*

1. A husband and wife executed a will giving their "landed estate" to their son for life with remainder to his heirs and, if he should die without heirs, then to their daughter M or her heirs, in consideration of his supporting his parents and their daughter A during their lives. The son wrote upon the instrument his acceptance of its terms and went into possession of the land under a verbal contract similar, in terms, to those contained in the instrument. By reason of the son's unkind treatment the parents quit the premises. *Held,* in an action by the father to recover the land,

(1) That, whether the son went into possession under the written or verbal contract, no estate vested in him and could not vest until the death of his parents.

(2) That the contract contained in the instrument was entire in its nature and the son, having violated it, the father is entitled to recover the land and its rental value for use and occupation.

(3) That the son is not entitled to recover anything for betterments or for the expenses of supporting his parents and sister.

CIVIL ACTION tried before *Adams, J.,* at Fall Term, 1897, of CHATHAM Superior Court upon exceptions filed by both parties to a report of a referee. The facts are stated in the opinion. Judgment was rendered for the plaintiff, awarding him the land and the rental value of

the land from the time the defendant, by his unkindness, caused the plaintiff to quit the defendant's house    To this judgment the defendant excepted and appealed. Judgment was rendered for the defendant for $719 for betterments and expenses incurred in supporting the plaintiff and his family, and from such judgment the *plaintiff* appealed.

*Mr. H. A. London* for plaintiff.
*Messrs. Womack & Hayes* for defendant.

MONTGOMERY, J.: The referee found as a fact that the defendant went into the possession of the tracts of land claimed by the plaintiff and described in the complaint, in 1881, under a verbal contract which in the referee's words "was very much in line with the requirements made in the Exhibit A as to the defendant towards the plaintiff, and the remuneration to be received by the defendant was nearly the same as stated in Exhibit A." Exhibit A is in the following words:

"We, the undersigned, make the following will, to-wit, our landed estate, all except the Welch tract, to our son Thomas Andrews during his life and after his death to his heirs; if he dies without heirs, our landed estate goes to our daughter Mary E. Ellis or her heirs, with this consideration: that the said Thomas Andrews agrees to support us and our daughter Maria Antoinette Andrews during our lives; whether or not the said Thos. Andrews survives our daughter, Maria Antoinette Andrews, she is to have her support out of our landed estate during her life, with our son Thomas and our daughter Mary, or some suitable one of their heirs to see to her during life.    All our perishable property, after the decease of both of us, after paying our debts and
122—23

funeral expenses, to be equally divided with our son Thomas and Mary. To which we set our hands and seals this 29th December, 1874.

W. D. ANDREWS,          [Seal]

PRICILLA F. ANDREWS, [Seal]

I accept the above instrument and agree to the terms therein.     .               THOMAS W. ANDREWS.

After writing the above we make Thomas Andrews and Archie Ellis, executors of our will."

The referee further found "that the defendant complied with the terms of the verbal contract in the way of supporting the plaintiff and his family, but some time during the year the treatment of the defendant toward the plaintiff became to be of such a nature that he, the plaintiff, could not continue to live with the defendant with any satisfaction, and on account of said treatment the plaintiff placed himself beyond the subjection and control of the defendant." The referee adopted a most circumlocutory style of stating the simple fact that the defendant's unkindness drove the plaintiff from the premises. The finding, too, in the language in which it was stated, was made under his Honor's directions after the referee's first report that he ought to have found "that the plaintiff left because of the defendant's unkindness to him." The defendant filed numerous exceptions to the referee's findings of fact, all of which were overruled by the Court.

We cannot review the defendant's exceptions to the findings of fact. None of the testimony was sent up in the case and we must conclude that the findings of fact were made upon sufficient evidence. Indeed, the findings of fact are immaterial, from the view we have of the case, except in one (in substance) that the plaintiff left the defendant's house because of the defendant's

unkind treatment of him, and the one that the rental value of the land was $50 a year. . The referee's conclusions of law are as follows:

1. That the paper writing marked exhibit A is not a conveyance—not such a contract to convey land as entitles the defendant to specific performance.

2. That the plaintiff is the owner in fee and entitled to the possession of the land described in the complaint.

3. That the plaintiff is entitled to recover of the defendant the sum of $50 a year from July, 1894, as damages for detention of said land, and costs of action."

The paper marked exhibit A is a contract testamentary in its nature. It clearly was to take effect at the death of the plaintiff and his wife. The lands are described as "our landed estate". The defendant accepts the instrument and agrees to its terms, i. e., agrees to support the plaintiff and his wife and daughter during their lives. The closing paragraph of the paper writing as to the disposition of the personal property is most significant, providing as it does for its equal distribution between the plaintiff's two children after the death of the parents and the payment of their debts and funeral expenses. There is not a word in the paper that points to the immediate vesting of the estate in the defendant. It makes really no difference whether the defendant was in possession under the paper writing or under a verbal contract similar in character to the written one between the parties.

The question then arises, did the defendant fail and refuse to carry out his part of the contract. The referee found that he did and his Honor affirmed the finding. That being so, it is clear that the defendant is entitled to nothing on account of betterments and expenses incurred by him in the support of the plaintiff and his

family. If the defendant was in possession of the lands under the written contract, he would be entitled to no such charges in his favor, for he has refused to perform his part of the contract—the contract being entire in its nature. If he was in possession under the verbal contract, the same rule applies and for the same reason.

The judgment of the Court below is affirmed as to that part of it which adjudges that the plaintiff is the owner in fee of the lands described in the complaint and ordering a writ of possession, with the costs, including the referee's fee. That part of the judgment which adjudges that the defendant recover of the plaintiff $719 for betterments and expenses of supporting the plaintiff and his family is not affirmed, but is erroneous. The plaintiff is also entitled to have judgment against the defendant for the sum of $50 per year from July, 1894, for the use and occupation of the lands.

Modified and affirmed.

PLAINTIFF'S APPEAL.

MONTGOMERY, J.: The plaintiff's fourth exception to the judgment of the Court below is sustained, and there was error in that part of the judgment which adjudged that the defendant recover of the plaintiff $719 for betterments and expenses in supporting the plaintiff and his family.

Error.